1  WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Katherine Warden, | No. CV-17-0384-TUC-LCK |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill, | |
| Defendant. | |

Plaintiff Katherine Warden filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Warden's Opening Brief, Defendant's Responsive Brief, and Warden's Reply. (Docs. 14, 16, 17.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 10.) Based on the pleadings and the administrative record submitted to the Court, the Court remands this matter for further proceedings.

## PROCEDURAL HISTORY

Warden filed an application for Disability Insurance Benefits (DIB) in September 2013. (Administrative Record (AR) 164.) She alleged disability from April 26, 2012. (*Id.*) Her last insured date was December 31, 2015. (AR 17.) Warden's application was denied upon initial review (AR 63-75) and on reconsideration (AR 76-91). A hearing was held on July 13, 2016. (AR 32-62.) Subsequently, the ALJ found that Warden was not disabled. (AR 15-25). The Appeals Council denied Warden's request to review the ALJ's decision. (AR 1.)

**FACTUAL HISTORY**

Warden was born on April 23, 1956, making her 56 years of age at the onset date of her alleged disability. (AR 164.) Warden did administrative office work from 2000 to 2003, and then worked as a realtor until 2012. (AR 38.) She last worked in April 2012, when she was in a car accident. (AR 37.)

The ALJ found that Warden had the severe impairments of fibromyalgia, degenerative disc disease, Sjogren's syndrome, sleep apnea, and obesity. (AR 17.) The ALJ determined Warden had the RFC to perform light work but could only occasionally climb ladders and reach overhead, and could climb ramps/stairs, balance, stoop, kneel, crouch, and crawl no more than frequently. (AR 18.) The ALJ concluded at Step Four, based on the testimony of a vocational expert, that Warden could perform her past relevant work as a realtor and office worker. (AR 25.)

**STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing his past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42

U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

Warden argues the ALJ committed two errors: (1) she failed to provide clear and convincing reasons for rejecting Warden's credibility; and (2) she erred in giving the treating physicians' opinions reduced weight. Warden requests a remand for the award of benefits.

**Credibility**

Warden argues the ALJ failed to provide clear and convincing reasons to reject her testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v.*

*Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Warden had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 19.) Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). Here, the ALJ did not make a finding of malingering. Therefore, to support her discounting of Warden's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

The ALJ discounted Warden's credibility because her statements regarding her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (AR 19.) Specifically, the ALJ found that Warden's activities of daily living were not consistent with her allegations of complete disability. (AR 24.) Next, the ALJ noted that no doctor had recommended lumbar surgery and her pain was mild to moderate with benefit from Lidocaine patches. (AR 25.) Finally, the ALJ stated that Warden's fibromyalgia, Sjogren's syndrome, and sleep apnea were stable. (*Id.*)

First, the Court looks at Warden's activities of daily living. The ALJ noted that Warden could care for her personal needs, prepare simple meals, swim twice a day, perform light housekeeping, drive and go out alone, shop, get along with others, go out to

eat with family members, pay bills, and follow instructions. (AR 24.) Critically, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). However, if a claimant's activities contradict her testimony, or the claimant spends a substantial portion of her day at activities that involve skills transferable to a work setting, those circumstances can form the basis for an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that Warden's activities of daily living were not consistent with her allegations of complete disability.

The ALJ's summary of Warden's activities was not complete and did not provide a holistic picture of her testimony. Although Warden testified that she grocery shopped, she either went with her husband or someone loaded and unloaded the bags from her car. (AR 40, 54, 232.) Warden's "light housekeeping" was limited to 30 minutes and she could not mop, sweep, vacuum, or carry the laundry basket. (AR 39, 200, 232.) After a short period of driving, Warden's hand would begin to go numb and her back would begin to hurt. (AR 41, 201, 232.) Warden clarified that "swimming" meant standing in the pool and moving her arms or sitting and moving her legs. (AR 52.) The ALJ did not mention Warden's testimony that she naps for one or more hours, three to seven days per week, and she spends six hours per day in a recliner chair. (AR 50, 51, 232.) Additionally, Warden stated that she could not hold a telephone, write, or work on the computer for more than 10 minutes because her hand would go numb, and walking or sitting for more than 30 minutes caused severe back pain. (AR 43-44, 45, 52-53, 197, 202.) When the entirety of Warden's testimony about her activities of daily living is considered, it is not inconsistent with her allegations of inability to perform basic work activities. See *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (limited routine activities carried out with difficulty, including daily naps and substantial time spent in a recliner, do not undermine a claimant's credibility). Therefore, this was not a clear and convincing reason supported by substantial evidence to discount her credibility.

Second, the ALJ relied upon the fact that no doctor had recommended lumbar surgery and her pain was mild to moderate with benefit from Lidocaine patches. The fact that surgery was not prescribed has no bearing on the severity of Warden's symptoms. It means only that there is no surgical solution for her pain, which does not undermine her credibility. Warden typically rated her pain as between a 4 and 6 out of 10. (AR 289, 331, 384, 393, 415, 577, 707.) These moderate pain ratings were based on Warden's usual activity level, which involved napping as needed and spending a large portion of the day in a recliner. (AR 50, 51, 232.) Warden testified that when her condition was aggravated, such as by too much activity or sitting or standing too long, her pain level was a 9 out of 10. (AR 231, 232, 783.) Further, Warden testified that Lidocaine patches were "somewhat" helpful (AR 47, 768); however, her pain was chronic and always present (AR 47, 56, 197). This is not a clear and convincing reason supported by substantial evidence to support finding Warden not credible.

Third, the ALJ relied upon the fact that Warden's fibromyalgia, Sjogren's syndrome, and sleep apnea were stable. While that accurately reflects the record, stable does not mean those impairments caused no symptoms. If it did, the ALJ would not have found them to be severe impairments at Step Two. (AR 17.) Over the course of multiple years, Warden continually reported fatigue and pain related to these conditions, along with other symptoms, to her doctors. (AR 315, 319, 355, 367, 375, 387, 442, 457, 462, 467, 472, 555, 577, 590, 707-08, 774, 778, 783, 963, 966.) At the hearing, Warden's attorney noted that the primary issue at that time was her back pain, rather than fibromyalgia. (AR 59.) For these reasons, this was not a clear and convincing reason to discredit Warden's symptom testimony.

The ALJ's remaining basis for discounting Warden's credibility was the objective medical evidence.[1] If the objective medical evidence fully explained a claimant's

---

[1] Defendant relies upon the fact that Warden declined further injections and narcotics as a basis to discount her credibility. (Doc. 16 at 13-14.) Although the ALJ mentioned this when summarizing the medical records, she did not rely upon it to discount Warden's credibility. (AR 21, 24.) This Court cannot uphold the ALJ's decision based on evidence the ALJ did not rely upon. *See Connett v. Barnhart*, 340 F.3d 871, 874

symptoms then credibility would be irrelevant. Credibility factors into the ALJ's decision only when the claimant's stated symptoms are not substantiated by the objective medical evidence. SSR 96-7p. Thus, it is error for an ALJ to discount credibility solely because a claimant's symptoms are not substantiated by the medical evidence. *Id.*; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). As this is the only basis remaining for the ALJ's credibility finding (AR 19) it is insufficient to sustain it. Additionally, the ALJ did not delineate with any clarity what "objective medical evidence" was contrary to Warden's symptom testimony.

In sum, the ALJ failed to provide clear and convincing reasons supported by substantial record evidence to support her credibility finding.

**Medical Opinions**

Warden argues the ALJ failed to provide specific legitimate reasons to reject the opinion of Dr. Rosenberg and to give limited weight to the opinion of Dr. Putty.

As an initial matter, Defendant argues that the opinions of Drs. Rosenberg and Putty are not relevant because they bear upon a time period after Warden's insured period had ended. Warden had reported back pain over the course of many years, from an April 2012 car accident through her last insured date of December 2015. (AR 314, 318, 319, 330, 375, 425, 435, 457, 462, 467, 477, 677, 747, 750, 783.) During 2014, despite complaints of pain, her degenerative disc disease was considered "stable." (AR 457, 462, 677.) In August 2015, Warden sought pain relief for back pain that she reported as travel-related. (AR 750.) Then, in late December 2015, she told her primary care doctor that her low back pain and shoulder pain had become noticeably worse. (AR 747.) Her doctor sent her to pain management and requested prior records to assess needed imaging and for a neurosurgical referral. (*Id.*) A March 5, 2016 MRI revealed mild spondylosis, lumbar facet arthropathy, and degeneration. (AR 774-75, 890.) Because Warden reported increased back pain prior to her last insured date, and was referred for further assessment

---

(9th Cir. 2003); *Bray*, 554 F.3d at 1225 (review of ALJ's decision must be done solely on "reasoning and factual findings offered by the ALJ").

at that time, and the condition is a degenerative one, the subsequent exams and medical opinions are relevant to the insured period. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.") (quoting *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir.1988)); *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975) (finding relevant medical reports from after claimant's insured period because claimant's arthritic condition was degenerative).[2] This finding is underscored by the fact that the ALJ did not discount either doctor's opinion based on its date. For these reasons, the Court rejects Defendant's argument that the 2016 evidence is not relevant to Warden's claim of disability.

The opinion of an examining physician generally is afforded more weight than a non-examining or reviewing physician's opinion. *Lester*, 81 F.3d at 830. Here, the opinions of Drs. Rosenberg and Putty were contradicted by that of Drs. Keer, Griffith, and Bendheim. When there are contradictory medical opinions, to reject a treating or examining physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Rosenberg

On August 1, 2016, Dr. Amy Rosenberg completed a physical residual functional capacity assessment based on four office visits in 2015. (AR 981.) Dr. Rosenberg noted the following limitations "per patient report": frequently carry 10 pounds; stand, walk, and sit less than 2 hours in an 8-hour day; requires a sit/stand option; can occasionally handle, finger, grasp, push/pull, climb ramps/stairs, balance, stoop, kneel, crouch, and

---

[2] Warden's case is not analogous to the one relied upon by Defendant to discount her evidence from 2016, *Ward v. Schweiker*, 686 F.2d 762 (9th Cir. 1982) (acknowledging that later discovered evidence could be relevant to a prior insured period but finding it was not in that case). In *Ward*, the claimant offered a wholly new diagnosis five years after the termination of her insured period. *Id.* at 763. Although a doctor opined the condition would have been present for several years, there was no medical evidence it was present five years prior to the diagnosis. *Id.* at 765. Here, Warden complained of the condition during her insured period, and the relevant tests and exams were conducted within the following six months.

- 8 -

crawl; can never climb ladders/ropes/scaffolds; and lie down and elevate feet more than 2 hours per day. (AR 982-83.) Dr. Rosenberg opined that Warden would miss 5-6 days per month due to impairments and is not capable of working eight hours per day, five days a week. (AR 983.) Dr. Rosenberg stated that Warden's pain is "provoked by prolonged standing, prolonged sitting, stooping, reaching overhead, and bending." (*Id.*)

The ALJ gave Dr. Rosenberg's opinion no weight because "it is stated to be based entirely on the claimant's own responses." (AR 24.) This is only a legitimate basis to discount a treating physician's opinion, if a claimant's self-reports are not credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Because the ALJ's credibility finding was not valid, it was error for the ALJ to reject Dr. Rosenberg's opinion because it was based on Warden's self-reports. Additionally, Dr. Rosenberg did not indicate that her findings that Warden could not work a 40-hour work week and would miss 5 to 6 days of work per month due to her impairments were based solely on patient reporting. (AR 983.) This was in contrast to Dr. Rosenberg's explicit notations on her other findings that they were based on self-reports. (AR 982-83.) The ALJ failed to provide a legitimate reason to reject Dr. Rosenberg's opinion.

Dr. Putty

Dr. Timothy Putty examined Warden one time on June 10, 2016. (AR 985.) He diagnosed chronic neck and back pain and right-side radiculopathy (based on a recent EMG). (*Id.*) Dr. Putty concluded that Warden could occasionally lift 20 pounds and frequently lift 10 pounds; she could stand, walk, and sit each more than 2 (but less than 6) hours per eight-hour shift and would require a sit/stand option; she could handle and finger frequently but grasp and push/pull only occasionally; she could never climb ramps/stairs/ladders/ropes/scaffolds, balance, or crawl, but could occasionally stoop, kneel, and crouch. (AR 985-86.) Dr. Putty determined Warden would miss two days of work per month due to her impairments. (AR 987.) The ALJ gave Dr. Putty's opinion "partial weight" stating that it was consistent with the doctor's findings but that he saw her only one time. (AR 24.)

The ALJ gave significant weight only to the opinions of non-examining physicians, Drs. Keer and Griffith. (AR 23.) While the ALJ could have discounted Dr. Putty's opinion in favor of a treating doctor with a longer treating history, limited observation of a claimant "is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant." *Lester*, 81 F.3d at 832 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(1)); *see also Andrews v. Comm'r of Soc. Sec.*, No. 2:17-CV-00038-MKD, 2018 WL 1528168, at *9 (E.D. Wash. Mar. 28, 2018) (discounting a medical opinion based on a single exam is "inconsistent" with giving great weight to a non-examining physician). The ALJ provided only one reason to discount Dr. Putty's opinion and that basis is not legitimate. Additionally, the ALJ's basis for giving Dr. Putty's opinion partial weight – limited contact – would only logically provide a reason to reject the entirety of his opinion. It is not a reason, without further explanation, to give weight to unspecified parts of his opinion but not others. For these reasons, the ALJ erred in rejecting Dr. Putty's opinion.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true treating physician opinions and a claimant's testimony that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 594; *Garrison*, 759 F.3d at 1021 (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected). The Ninth Circuit holds that application of the credit as true rule is *mandatory*

unless the record creates serious doubt that the claimant is disabled. *Garrison*, 759 F.3d at 1021.

Here, the Court found the ALJ improperly rejected medical opinions and Warden's symptom testimony. However, credit as true is not warranted because there remains the outstanding issue of the onset date of Warden's disability. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999); *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding remand for further proceedings appropriate when crediting the evidence would not identify the onset date). Although the Court found that Warden consistently complained of varying degrees of back pain from the alleged onset date (when she was in a car accident) through her last insured date, the record also reflects a worsening of that condition just prior to the insurance termination date. Although Warden testified to disabling conditions from April 2012 forward, Drs. Putty and Rosenberg's opinions are not clearly applicable to the entirety of that period. Thus, even crediting the testimony of Warden and the opinion of her treating physicians related to her back pain, the onset date is not evident. Additionally, Warden had numerous other severe impairments throughout that period. By focusing on her 2015 and 2016 back pain in this Order, the Court does not imply that Warden's other conditions may not alone, or in combination with her back pain, establish disability from the onset date. In particular, from April 2012 to December 2015, Warden reported ongoing neck pain, hand numbness, and daily fatigue.

*Regennitter* instructs the Court to "remand this case to the Commissioner for resolution." In reviewing Warden's case upon remand, the ALJ should re-examine all the evidence this Court found to have been improperly discounted. Further, the ALJ should ensure she complies with SSR 83-20 in evaluating the onset date and call a medical advisor at the hearing as necessary.

Accordingly,

**IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

Dated this 18th day of September, 2018.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge